SCHMIT, Appellant, v. SEKACH and others, Respondents.

*November 29, 1965—January 4, 1966.*

For the appellant there was a brief and oral argument by *Donald M. Gorectke* of Milwaukee.

For the respondents there was a brief by *Kivett & Kasdorf,* attorneys, and *John M. Swietlik* and *Keith I. Johnston* of counsel, all of Milwaukee, and oral argument by *Mr. Swietlik.*

GORDON, J.

*Negligence of Mr. Sekach as to Lookout.*

The principal issue presented upon this appeal is the correctness of the plaintiff's contention that Mr. Sekach was negligent as to lookout as a matter of law. It is urged that the jury's negative answer to that question must be changed. In our opinion, this contention is not meritorious.

The appellant relies principally upon three prior decisions of this court to demonstrate that there was negligence as to lookout on the part of Mr. Sekach as a matter of law. The first of such cases is *Bailey v. Zwirowski* (1954), 268 Wis. 208, 67 N. W. (2d) 262, which the appellant denominates as an "unusually analogous factual situation." We disagree with the latter premise and thus arrive at a conclusion contrary to that of the appellant.

In the *Bailey Case,* the plaintiff was traveling behind a bus which stopped at an intersection to discharge passengers, and then the bus turned to its right. Thereupon, the plaintiff proceeded forward into the intersection where a

collision occurred with a car which had approached from the plaintiff's right. It was held that the plaintiff was causally negligent as to lookout as a matter of law, the court observing, at page 210:

"It is undisputed that there was no stationary obstruction to plaintiff's view to the east for a distance of about 1,000 feet. He testified that when the bus started forward he looked both ways and started up too. He saw nothing. He did not testify that he ever looked to his right again; he did testify that he never saw defendant's car before the impact, . . ."

In our opinion, the foregoing quotation effectively confirms our view that the facts of the *Bailey Case* are significantly different from those of the case at bar. In the *Bailey Case,* the plaintiff had an adequate opportunity to observe the approaching vehicle; Mr. Sekach had no such opportunity.

The second case which the appellant contends is in support of her position is *Oelke v. Earle* (1956), 271 Wis. 479, 74 N. W. (2d) 336. There, the vision of the driver (one Maxfield) was obstructed by a newspaper shack when he was one third of a block away from the intersection. Maxfield proceeded into the intersection without making any further observations to his right until the time that he had arrived almost at the center of the intersection; Maxfield testified that he did not see the Earle car coming from the right until the moment of the collision.

Although it was the jury which found Maxfield negligent as to lookout, it was this court that ruled that his negligence was causal as a matter of law. At page 483 of the *Oelke Case,* we pointed out that if Maxfield's opportunity to look to the right was obstructed when he was a third of a block away from the intersection, "then it was his duty to make a further observation to the east at a point which would have enabled him to take effective steps to avoid a collision." The distinction between the

*Oelke Case* and the case at bar rests upon the fact that the jury found that Maxfield was negligent as to lookout in not attempting to make any further observations to his right subsequent to his original observation.

The third case to which the appellant has alluded is *Ashley v. American Automobile Ins. Co.* (1963), 19 Wis. (2d) 17, 119 N. W. (2d) 359. In our opinion, the *Ashley Case* renders no support for the plaintiff's contention because there was no obstruction to vision in that case. That was a case of a neglected opportunity to maintain a proper lookout, and the court ruled that a jury question was presented by the facts therein.

We believe that the appellant has misconstrued those cases in which this court has held that one who has a right-of-way is not excused from maintaining a proper lookout. *Ashley v. American Automobile Ins. Co., supra; Reddick v. Reddick* (1961), 15 Wis. (2d) 37, 112 N. W. (2d) 131; *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163. We reaffirm the foregoing rule. However, when, as in the present case, a driver is unable, because of physical circumstances, to observe a vehicle which is about to invade his right-of-way, it may not be said that the failure to see such invading vehicle constitutes negligence as a matter of law. Our review of the record fails to yield sufficient evidence to show conclusively that Mr. Sekach could have or should have seen the Schmit vehicle before he actually did; the jury was entitled to conclude that he saw the Schmit vehicle at his first opportunity to do so, which was at a time when it was only 10 to 15 feet in front of him.

*The Emergency Instruction.*

The appellant contends that it was improper for the court to have given the emergency instruction because Mr. Sekach was negligent as to lookout as a matter of

law. We have already rejected the latter contention. However, we believe that it was error to have given the emergency instruction for a different reason, which we will now examine.

The trial court did not submit a question relative to Mr. Sekach's management and control. Although the appellant complains of such failure on this appeal, we believe that there was no issue as to management and control presented by the evidence. Mr. Sekach was driving a vehicle weighing approximately 38,000 pounds. As soon as he saw the Schmit vehicle 10 to 15 feet ahead, he applied his brakes and did not have time to sound his horn. There were six inches of skid marks left as a result of such braking. We do not believe that Mr. Sekach could have managed or controlled his vehicle in any other manner so as to avoid the accident as he entered the intersection under the circumstances which prevailed.

The emergency instruction relates to the course taken by a driver who is suddenly confronted by an emergency which was not contributed to by his own negligence. As usually given, the instruction states that one who is thus compelled to act instantly is not guilty of negligence if he makes a "choice of action or inaction as an ordinarily prudent person might make, if placed in the same position, even though it should afterwards appear not to have been the best or safest course." See Wis J I—Civil, Part I, 1015.

The instruction is designed to relieve a driver who is confronted with an emergency from being labeled negligent in connection with his manner of driving, i. e., his management and control. The instruction relates to his "action or inaction" and his "best or safest course." Thus, unless a driver's management and control is being inquired into, there is no occasion for a trial court to give the emergency instruction. We regard the error as nonprejudicial.

*The Instructions Regarding*
*Comparison of Negligence.*

With reference to comparative negligence, the court submitted the following instruction to the jury:

"In your determination of this question, you will likewise take into consideration the finding made by this court as a matter of law with regard to the causal negligence of the impleaded defendant driver, Henry Schmit, with regard to failing to yield the right of way to the truck driver."

The appellant requested that the court give an additional instruction with respect to the comparison question which would caution the jury not to give greater or lesser importance to a finding made by the court than it would to a similar finding which was made by the jury. This related to the fact that the court had made a finding that Mr. Schmit was causally negligent in failing to yield the right-of-way.

Since no negligence on the part of Mr. Sekach was found by the jury, there was no occasion for them to answer the question relating to comparison, and it would seem to follow that the appellant's criticisms of the instructions in this regard are academic. However, the appellant urges that the errors attendant to the instructions tended to influence the jury in favor of Mr. Sekach. Less because of the latter contention and more because of our desire to resolve the specific issues, we address ourselves to the merits of these instructions and conclude that there was no prejudicial error. We find no flaw in the instruction (quoted immediately above) regarding the jury's right to "take into consideration" a finding made by the court in connection with its comparison of the negligence.

The problem presented by the failure of the trial court to give an instruction which would caution the jury not to give special weight to a finding of negligence which

had been made by the court was discussed in the case of *Niedbalski v. Cuchna* (1961), 13 Wis. (2d) 308, 313, 314, 108 N. W. (2d) 576. Although in that case there was no formal request for such an instruction, this court stated, at page 314:

"We decline, however, to adopt a rule based on a premise that a jury attributes disproportionate importance to negligence found by the judge in all, or a substantial number of the cases in which findings are made as a matter of law."

If a trial court is concerned that a jury may give undue weight to a finding of negligence which has been made by the court because of the jurors' respect for the court's position or the judge's experience (or for any other reason), it is appropriate that a cautionary instruction be given; the failure to give such a requested instruction would not rise to the dignity of being an error, let alone a prejudicial one.

### Alleged Errors as to Admission of Evidence.

The appellant contends that there were two occasions during the trial on which improper evidence was admitted over her objection. One such event occurred when Dr. Kustermann was permitted to be cross-examined concerning a 1950 operation performed on the plaintiff for an intestinal disorder. The other error related to the admission of the hospital records concerning the same operation.

The transcript shows that the plaintiff was asked during the trial whether she ever had any trouble with her stomach before the accident, and she responded in the negative. The respondents contend that they were entitled to impeach her testimony that she had never had stomach trouble prior to the 1962 accident by showing the 1950 intestinal operation and the hospital records which described such event. The hospital record of the

1950 operation reflected that she had "generalized abdominal pain."

We believe that the cross-examination of the plaintiff which was permitted in this case was well within the discretion of the trial court. *Nehls v. Nehls* (1963), 21 Wis. (2d) 231, 238, 124 N. W. (2d) 18. The circumstances in the case at bar are unlike *Knight v. Hasler* (1964), 24 Wis. (2d) 128, 128 N. W. (2d) 407, where there was a total failure to attempt to connect the previous injuries with the injuries in the case that was then before the court. Mrs. Schmit opened the door by affirmatively asserting the absence of any prior abdominal difficulty, and, in addition, there is a physical proximity between the injured portion of the anatomy in the instant case and that involved in the past operation.

*By the Court.*—Judgment affirmed.